UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER W. BOUNDS,<br><br>               Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | Case No. 3:23-cv-00255-DCN<br>         3:18-cr-00290-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Christopher Bounds's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Petition"). Dkt. 1; CR-290, Dkts. 254. 255.[1] The Government opposes Bounds's Petition. Dkt. 8. The sentence in this case came about after a jury trial in which the jury found Bounds guilty on all counts.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES

---

[1] In this order, the reference "CR-290" is used when citing to the criminal case record in Case No. 3:18-cr-000290-DCN; all other references are to the instant civil case.

Bounds's Petition.

## II. BACKGROUND

### A. Factual History

On August 15, 2018, law enforcement officers stopped Bounds for observed traffic violations and suspicion of drug trafficking. Bounds was compliant during the traffic stop and readily admitted to having a loaded AR-15 between his leg and the truck's center console, a loaded handgun in his back pocket, and several other firearms within reach. When asked about "all the guns," in his vehicle, Bounds told officers he was "a CI for the Federal Government." CR-290, Dkt. 93-1. Officers accordingly asked Bounds who his "handler" was and who Bounds made "contact with" when he had "a tip." *Id*. Bounds indicated that he did not call anyone, stating "[t]hey follow me around and I give information. . . ." *Id*.

During the stop, Bounds admitted he was a heroin addict and that he was currently high on drugs. Police eventually seized one and one-half pounds of methamphetamine, more than one pound of heroin, $4,856.00 cash, and sixteen firearms—most of which were loaded—from Bounds's truck.

On September 18, 2018, a federal grand jury indicted Bounds on numerous drug and gun related charges. CR-290, Dkt. 1.

Bounds cycled through three attorneys before the Court appointed CJA Counsel Jonathon D. Hallin to represent him. CR-290, Dkt. 62. Hallin was Bounds's attorney from July 9, 2019, until roughly June 3, 2021, when the Court appointed Sandy Baggett as Bounds's appellate counsel. CR-290, Dkt. 238. Hallin represented Bounds in all relevant

pre-trial proceedings, at trial, and at sentencing.

In preparation for trial, on November 8, 2019, Bounds filed a Notice of Intent to Present Public-Authority Defense. CR-290, Dkt. 71. Specifically, Bounds admitted he possessed the drugs and firearms at issue in this case, but argued he possessed such guns, and possessed and sold such drugs, under the DEA's authority. The Government subsequently filed a Motion in Limine seeking to exclude any evidence or testimony related to Bounds's purported public authority defense at trial. CR-290, Dkt. 93. After a hearing, the Court granted the Government's motion and precluded Bounds from "present[ing] testimony or evidence regarding a public authority defense at trial . . . ." CR-290, Dkt. 119, at 16.

On August 28, 2020, following a four-day trial, a jury found Bounds guilty on all counts. CR-290, Dkt. 171. The Court subsequently sentenced Bounds to 322 months of incarceration. CR-290, Dkt. 225.

Bounds appealed his conviction and sentence. CR-290, Dkt. 227. Bounds's appeal was based almost entirely on the premise that the Court erred in not allowing him to present an "innocent intent" defense at trial. The Ninth Circuit rejected this argument, finding Bounds was allowed to present the defense he wanted, and affirmed the Court in all respects. CR-290, Dkt. 248.

On May 5, 2022, Bounds moved for the appointment of counsel to represent him in his forthcoming § 2255 Petition. CR-290, Dkt. 249. The Court granted the motion and appointed Sandy Baggett—Bounds's appellate counsel—as his counsel for these § 2255

proceedings.[2] CR-290, Dkt. 251.

On May 22, 2023, Bounds timely filed his Petition. Bounds appears to have typed his Petition using a standardized form. Dkt. 1. He and his attorney signed that form on May 11, 2023. *Id*. at 6. His attorney then filed a memorandum is support of his motion on May 22, 2023. Dkt. 1-1. The Government filed its response in opposition to the Petition on November 30, 2023. Dkt. 8. The matter is ripe for adjudication.

## III. LEGAL STANDARD

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "A district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he

---

[2] Notably, this is the first time during the undersigned's tenure as a federal judge that the Court has appointed an attorney to represent a defendant in a 2255 proceeding.

standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to either require a hearing, or to justify relief. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

Bounds raises three claims in his Petition. First, he claims Hallin presented a "personal use" defense at trial that he (Bounds) did not authorize, and that doing so violated his constitutional right to control his defense. Second, Bounds claims Hallin's choice to present this "personal use" defense constituted ineffective assistance of counsel. Third, Bounds argues Hallin was deficient because he failed to present an innocent intent defense at trial. The Court will address each in turn. It begins, however, with Bounds's third argument because the history and resolution of that issue helps frame the other two claims.

### A. Failure to Investigate an Innocent Intent Defense

At first blush, it appears Bounds's third claim is that Hallin failed to present an innocent intent defense at trial. But this is not quite right because he was permitted to

present such a defense—as explained below. Thus, Bounds does not simply question the presentation of this defense, but rather suggests Hallin's failure to *investigate* this defense (and to adequately present it at trial) was a violation of his constitutional rights. To get to this specific question, however, the Court must set the stage for how this all came about.

As noted, in pre-trial motion practice, the Government moved the Court for an order prohibiting Bounds from presenting any testimony or evidence related to a "public authority" defense at trial. Briefly put, Bounds wanted to put on evidence that he was working with the DEA as a quasi-informant, and that because of this arrangement, he was legally excused from the crimes with which he was later charged. The Court held a two-hour hearing on the matter, during which Bounds had the opportunity to proffer the evidence he believed supported this defense. CR-290, Dkt. 106. The Court followed that hearing with a detailed, 16-page decision explaining why it would not allow Bounds to present any testimony or evidence related to a public authority defense at trial. CR-290, Dkt. 119. In essence, the Court found Bounds's belief that he was acting as a confidential source was "not reasonable" and that there was no evidence to support his public authority defense. *Id*. at 15.

On direct appeal, Bounds argued the Court erred in denying him the ability to present a public authority defense at trial, and further, that he should have been allowed to testify to his "innocent intent." Dkt. 12-1, at 3, 23–25. Some additional background related to Bounds's "innocent intent" defense is helpful.

In a pre-trial brief, Bounds included a section entitled: "Irrespective of the Public Authority Defense, Mr. Bounds has a Constitutional right to present evidence concerning

his purpose and *intent* for possessing drugs and firearms." CR-290, Dkt. 148, at 3 (emphasis added). Bounds argued he was entitled to present evidence of his "purpose and motivation for acquiring and possessing controlled substances and firearms as it is relevant to the conspiracy charge and constitutes his theory of the case." *Id*. at 3, 4 ("[I]f he acquired the drugs with the intent that they be turned over to investigators, no conspiracy to distribute existed."). But Bounds did not present any evidence to support his innocent intent argument during the pre-trial hearing on his public authority defense. *See generally* CR-290, Dkt. 113.[3]

On the first morning of trial—before the jury was empaneled—the Court discussed Bounds's defense strategy. Hallin recognized that he could not go too far down the path of pointing fingers at other people or arguing some type of justification for Bounds's criminal activity without running afoul of the Court's ruling on his public authority defense. Nevertheless, Hallin argued Bounds's subjective intent was relevant and admissible because, "it will go directly to the conspiracy charge." CR-290, Dkt. 232, at 15. Hallin also specifically informed the Court that the latter argument was "broader" than the previously argued public authority defense because Bounds was going to testify to "his intent, why he was acquiring these drugs. And the statement could not be necessarily that he was doing so as an operative of the DEA but that he thought he was and he intended to turn those over to the Government." *Id*. at 14. At that time, the Court made a preliminary ruling—

---

[3] The only time the word "intent" was used—in the context of Bounds and any defense—was in Hallin's opening statement when he said that Bounds "began to use Mr. Perez to develop an understanding of the trafficking mechanisms of the Sinaloa cartel with the *intent* of providing this knowledge along to the DEA." CR-590, Dkt. 113, at 9 (emphasis added). There is no other discussion about an innocent intent defense.

consistent with its ruling on the public authority defense—that any subjective intent Bounds may have had in obtaining controlled substances and firearms would not come in during trial, but invited Bounds to revisit the issue once the Government rested its case-in-chief. *Id*.

At the close of the Government's case in chief, Bounds renewed his motion to discuss his "intent" before the jury and asked for guidance regarding what he "would be permitted to testify to." CR-290, Dkt. 236, at 108. The Court ruled as follows: "All right. He cannot testify that he was working for any government agency or was working undercover. He can testify that he had the intent to give the drugs or the guns to the police, but that's the only thing he can answer. But of course on cross-examination they can ask him did he ever do that." *Id*. Bounds's counsel requested clarification and the Court responded: "He can make the general statement that his intent throughout this time was to gather information and items to turn over to the police." *Id*. at 109.[4] And Bounds did just that when he testified.

Before his testimony, the Court asked Bounds a series of questions to ensure he understood both what he was doing and the ramifications of his decision to testify at trial. CR-290, Dkt. 236, at 111–17. The Court specifically asked Bounds if he understood the

---

[4] The Court faced a difficult task at trial. It had already precluded Bounds from raising any public authority defense. But the Court also recognized that Bounds was entitled to present his theory of the case. The problem was that Bounds's theory of the case was contrary to the evidence, confusing, and ran the risk of infringing the Court's prior ruling on the public authority defense. While not the same as a public authority defense, an innocent intent defense has some overlap with a public authority defense and the Court was concerned that allowing Bounds to make such an argument would violate its prior order and/or result in juror confusion. The Court tried to strike a fair balance by allowing Bounds to testify about his intent while still precluding statements to suggest Bounds's intent was sanctioned by the DEA or any other public authority.

Court's prior ruling about the public authority defense. Bounds responded that he understood, but that it was "kind of the gray area" and he was "going to try to state [his] intent to the jury in the way [the Court] instructed . . ." *Id*. at 116.

During Bounds's testimony, the Court had to dismiss the jury multiple times to advise Bounds what he was, and was not, permitted to say because he repeatedly violated the Court's prior rulings. To be frank, even with such guidance, Bounds's testimony went beyond the Court's parameters on some occasions. But other than striking one of his responses, the Court let Bounds's testimony stand and opted to move forward. However, the Court did note it was very concerned about a mistrial based on Bounds's testimony. *Id*. at 141.

The Court's point is that Bounds was able to say what he wanted to say about his "innocent intent" at trial. For example, Bounds testified that his "intention was to gather intelligence and firearms," *id*. at 133; that he contacted other drug users "with the intent to gain intelligence," *id.* at 134; that he didn't do anything he did "for profit," only to "gain [] intelligence," *id*. at 136; and that his "intentions were to turn it all over to law enforcement." *Id*. at 152. Bounds also testified that his intention "was for them [the drugs and guns] to end up exactly where they are right now . . ." *Id*. at 133. When asked to clarify if he meant the materials were "in the possession of the government," Bounds responded "absolutely." *Id*.

As noted, the Court did strike some of Bounds's statements "regarding the government and law enforcement," *id*. at 142, but other than that, it let Bounds testify that the reason he "did not make any efforts to conceal [his] involvement in drug sales" was

because his "intentions were to turn it all over to law enforcement." *Id*. at 152.

In addition to Bounds's testimony, Hallin argued an innocent intent theory before the jury as well. Because of the Court's ruling regarding the public authority defense, Hallin was careful in his terminology, but he discussed Bounds's efforts to be open and honest with law enforcement and his willingness to help bring down criminal organizations—implying that Bounds had an innocent intent in possessing the drugs and guns. *See generally* Dkt. 236, at 195-198. And in his closing argument, Hallin specifically stated: "What is in dispute here is whether my client possessed those [drugs and guns] with the intent to distribute to another person. You heard my client's testimony today as to what he intended to do with those drugs. It was not to distribute to another person. It was to turn those over." *Id*. at 201.

Despite this, Bounds claimed on appeal that the Court prohibited him from making an innocent intent defense at trial (in addition to his contention that the Court erred in its prohibition of his public authority defense).

After reviewing the Court's findings regarding Bounds's public authority defense, the Ninth Circuit concluded that "the district court properly precluded this defense."). *United States v. Bounds,* 2022 WL 1284302, at *1 (9th Cir. Apr. 29, 2022). Additionally, the Ninth Circuit found Bounds *had* been allowed to make an innocent intent defense at trial and that "the district court did not err in its rulings concerning this defense." *Id*. In so holding, the Circuit explained:

> The restrictions on Bounds's testimony were not arbitrary, because permitting him to testify about his belief that he was a DEA informant risked misleading the jury into considering his public-authority defense. *See*

> *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006). They were not
> disproportionate, because the court permitted Bounds to testify that his intent
> was "to turn [evidence and drugs] all over to law enforcement," and that his
> "intention was to gather intelligence and firearms." Even though the court
> did not permit him to say that he believed he was cooperating with "the
> government," Bounds adequately presented his theory that he lacked
> culpable intent.

*Id*. at *2. In short, the Circuit found that Bounds had been allowed to present his theory of

the case (e.g. that he had an innocent intent) because he was allowed to testify regarding

his mental state in obtaining the drugs and guns.

Bounds now tries to reassert his claim regarding his innocent intent defense—at

least to a certain degree. To the extent this claim overlaps with the argument Bounds made

on appeal, such is not appropriate. The Ninth Circuit stated over 50 years ago that "the law

in this circuit is clear when a matter has been decided adversely on appeal from a

conviction, it cannot be litigated again on a 2255 motion." *Odom v. U.S.*, 455 F.2d 159,

160 (9th Cir. 1972). *See also United States v. Ramirez*, 327 F. App'x 751, 752 (9th Cir.

2009) (holding that a defendant is "barred from using a § 2255 motion to relitigate issues

decided on direct appeal").

Thus, the Court returns to the question of what Bounds is actually arguing in his

2255 Petition, and how such argument is affected by his direct appeal.

On appeal, Bounds claimed the Court erred in *not* allowing him "to give the jury

any [] evidence" regarding his intent. Dkt. 12-1, at 25. But the Ninth Circuit rejected that

claim and affirmed this Court. As such, Bounds cannot relitigate his claim that he was

barred from presenting an innocent intent defense.

But the Ninth Circuit did not rule on whether Hallin's investigation into, or

presentation of, Bounds's innocent intent defense was adequate. And this issue seems to be Bounds's focus in his Petition.

Interestingly, Bounds begins by arguing the Ninth Circuit's holding strengthens his position here. Specifically, Bounds contends the Ninth Circuit's finding that there was insufficient evidence to support an innocent intent defense illustrates that Hallin was derelict in his duties. The Court disagrees.

As a threshold matter, it is tempting to say that any losing argument would have been a winning argument *but for* some additional discovery, argument, testimony, explanation, caselaw, witness, or evidence. While that may be the case under some circumstances, it is just as likely that the court (or the jury) would have resolved the question the exact way it did even considering any additional evidence. The Court is not willing to find Hallin failed to thoroughly investigate based solely upon Bounds's mere supposition and the fact that Hallin's innocent intent defense was unsuccessful. Even with all the evidence in the world, the Court (and the jury) could have still come to the same conclusion regarding the innocent intent defense—that it lacked merit.

But this is Bounds's broader point: that Hallin did not do a better job investigating this claim, interviewing witnesses, and collecting evidence to make a stronger showing on this defense. The Court is not in a position to say exactly how much discovery or work should have gone into this defense. But it can say this: in light of the closeness between the innocent intent defense and the public authority defense, and considering the Court's rejection of the public authority defense, it is completely understandable that Hallin did not spend more time and resources delving into Bounds's innocent intent. Again, although the

public authority and innocent intent defenses are distinct, Bounds claimed he had an innocent intent to acquire the drugs and guns *because* he was working for the Government. Thus, the two are closely connected in this case and allowing Bounds to discuss his innocent intent in detail ran the risk of running head-on into his public authority defense.[5] That is why the Court struck the balance it did at trial.

Notably, in its pre-trial decision on Bounds's public authority defense, the Court specifically found "no indication that Bounds ever made good on his 'intent' and provided any knowledge, drugs, or guns to the DEA." CR-290, Dkt. 119, at 11. The Court also outlined *numerous* statements Bounds made that undercut his claim that he worked for law enforcement or intended to turn anything over to law enforcement. *Id*. at 11–15. Any attorney assessing the Court's analysis would not think it prudent to devote significant resources to an innocent intent defense. Furthermore, even if Hallin had done more discovery as Bounds wanted, the Court likely would not have let any of the evidence in since such evidence could have risked "misleading the jury as to the availability of the public-authority defense." *Bounds*, 2022 WL 1284302, at *2 (9th Cir. Apr. 29, 2022). The Court finds Bounds's argument that Hallin's performance was deficient because he did not investigate an innocent intent defense more "thoroughly" is without merit.

Finally, as Hallin outlines in his affidavit, Bounds's prior attorney advised Hallin that Bounds only wanted to pursue a public authority defense. Dkt. 8-1, at 3. Furthermore,

---

[5] In his sworn affidavit in support of his 2255 Petition, Bounds states Hallin did not investigation or prepare for his defense which was "that I believed I was working for law enforcement." Dkt. 1-1, at 19. Bounds's own words that his defense was about him "working for law enforcement" sounds more akin to a public authority defense than an innocent intent defense, but the Court's point is that Bounds's argument in this case combines these two theories to the point they are difficult to separate.

Hallin represents that when he first met with Bounds following his appointment, Bounds reaffirmed his desire to pursue solely a public authority defense. That is the defense Hallin investigated, briefed, and argued. It appears that it was only *after* the Court's exclusion of that defense that Bounds pivoted slightly to an "innocent intent" defense. That said, this occurred close to trial. Hallin argued the defense and put forth the evidence he could, but most of that same evidence had already been rejected by the Court as part of the public authority defense. So again, by all accounts, Hallin did the best he could under the circumstances.

In sum, Hallin's performance regarding Bounds's "innocent intent" defense was not deficient. First, by all accounts, Bounds was focused on a public authority defense for the bulk of this case—and that is what Hallin focused on as well. Second, when Bounds indicated he wanted to pursue an innocent intent defense, Hallin worked within the confines of the Court's rulings. At trial, Hallin made an innocent intent argument (among other arguments) and Bounds testified regarding the same. And third, the Ninth Circuit specifically held Bounds "*adequately presented* his theory that he lacked culpable intent." *United States v. Bounds,* 2022 WL 1284302, at *2 (emphasis added).

Upon review of all the evidence and argument, the Court finds Bounds's claim regarding his innocent intent defense unavailing, and it will not vacate, set aside, or correct Bounds's sentence on this ground. Bounds's third claim in his Petition is accordingly DISMISSED.

## B.  Decision to Present a "Personal Use" Defense Without Authorization

The Court turns next to Bounds's first claim in his Petition—that Hallin presented

a "personal use" defense both without Bounds's express permission and contrary to his wishes. Bounds claims Hallin told him prior to trial that Bounds no longer had a say in his defense, that he (Hallin) was going to present a personal use defense, and that Bounds should just get on the stand and respond "yes" to Hallin's questions. Dkt. 1, at 4.

But Bounds frames this argument in an interesting way. The phraseology seems to imply that Hallin presented a personal use defense *instead of* an innocent intent defense at trial. As explained in detail above, however, Hallin (and Bounds) were able to present an innocent intent defense at trial.

Moreover, it is not entirely clear that "personal use" was even a full-blown defense at trial. The Government does not appear to think it was. Dkt. 8, at 11 (explaining that Hallin did not put forth a personal use defense at trial, but rather an innocent intent defense). And even if this was a true "defense," there is no indication Bounds objected to Hallin arguing this particular defense at trial. At least until now. The Court will explain.

In his opening statement at trial, Hallin said that Bounds "fell back into the throes of his addiction" after the loss of a close friend. CR-290, Dkt. 232, at 47. *See also id.* at 49 (Hallin discussing Bounds's weight loss and noting "that just goes to show you how far into the throes of addiction he had gotten himself"). Hallin suggested that this case was not about a conspiracy or "big-time drug dealer" but was rather the "simpl[e] story of addiction . . . and the fact that Mr. Bounds struggles with mental illness . . . ." *Id.*

When Bounds was on the stand, Hallin asked him various questions about his history of drug use, prior state felony conviction for drugs, and other questions related to substance abuse. CR-290, Dkt. 236, at 118–20. Bounds fully admitted to being an addict,

and a "heavy" one at that. *Id*. at 129.

Interestingly, however, Hallin did not address this apparent "personal use" defense in his closing argument. In fact, Hallin said very little about Bounds's personal drug use during closing.[6] Instead, Hallin highlighted that Bounds was honest and helpful to law enforcement, that Bounds did not act like a normal drug dealer, that he intended to turn over the drugs and guns in his possession, that those who testified against Bounds had something to gain by doing so, and that Bounds's behavior did not meet the elements of the crimes charged. *See generally id.* at 194–200. But Hallin never argued that Bounds possessed the drugs in question for the purpose of supporting his own addiction.

If "personal use" was truly a full-blown defense, it would have been prudent to mention it in closing. This observation lends itself to the idea that "personal use" was not truly a defensive strategy at trial, but simply a distraction tactic utilized by the defense to poke holes in the Government's case.[7]

But even assuming that "personal use" was a defensive strategy used at trial, and even assuming Hallin failed to ask Bounds for his express permission to make such an argument, there is no indication that Bounds was *opposed* to the idea.[8]

---

[6] Hallin said that "everyone around Mr. Bounds that was involved with drugs took steps on varying degrees to conceal their drug activity" but that Bounds "did not." CR-290, Dkt. 236, at 197. He also said that Bounds and one witness had a "shared interest in using drugs," *id*. at 198, and that another witness "started supplying [Bounds] with smaller user amounts of drugs." *Id*. at 199.

[7] Such a strategy is completely acceptable at trial.

[8] It is also worth noting that Bounds's claim contradicts itself. Bounds claims simultaneously that Hallin failed to consult him about asserting a personal use defense at trial, but also that Hallin ignored his clear and competent objections to using such a defense. If Hallin never consulted Bounds about the personal use defense, then how/why did Bounds clearly object to such a defense?

Bounds cites a Supreme Court case for the proposition that "when a client expressly asserts the objective of his defense to his charges, his lawyer must abide by that objective and may not override it." Dkt. 1-1, at 5 (citing *McCoy v. Louisiana*, 584 U.S. 414 (2018)). This is a true principle. But in that case, there was evidence that the defendant "vociferously insisted" that his counsel not make a certain argument. *Id*. at 417. Specifically, the defendant "insistently" and "strenuously" communicated his objection to his attorney's choice to proceed with an admission of guilt to three murders "to court and counsel." *Id*. at 428. Bounds also cites to a more recent Ninth Circuit case where an attorney proceeded with an insanity defense even though his client "repeatedly emphasized that an insanity defense was inconsistent with his goals." *United States v. Read*, 918 F.3d 712, 721 (9th Cir. 2019)

Setting aside the fact that the two cases Bounds cites are factually different than the current dilemma—dealing with a full confession to multiple murders and an insanity defense—the evidence regarding the defendants' behavior is vastly different as well. In those cases, the defendants gave repeated, insistent, and clear indications to counsel *and the court* that their attorneys were violating their clearly expressed wishes. Here, Bounds does not cite any evidence from the criminal case record to suggest he informed either Hallin or the Court that he objected to Hallin's assertion of a personal use defense. Instead, the *only* evidence of Bounds's disagreement with Hallin is Bounds's self-serving, after-the-fact statement in the instant civil case that he "did not agree to this [personal use] defense or consent to such a defense at trial," and that Bounds told Hallin this and he

MEMORANDUM DECISION AND ORDER - 17

"ignored my wishes and my instructions."[9] Dkt. 1-1, at 18–19.

Critically, this is the first time the Court is hearing this, which is particularly significant given the nature of Bounds's relationship with the Court during the pendency of this litigation. Notably, after his criminal trial concluded, Bounds filed twenty-one motions/notices/letters with the Court. All but two were filed under seal. While some were simple and mundane (e.g. a 1-page request for a copy of the docket sheet), *many* were lengthy (e.g. a 26-page document outlining "newly-discovered evidence" the Court should consider). With limited exceptions,[10] only the Court—not Hallin, not the Government, and not Bounds's current attorney—has seen these filings. For that reason, the Court will not delve into their substance to a great degree. But the Court feels Bounds's submissions are worth mentioning for the following reason. In each of those twenty-one filings—many of which disparaged the jury's verdict, questioned the Court's rulings, or were critical of Hallin—not a single mention is made of Bounds's purported objection to Hallin's assertion (if any) of a personal use defense.

Bounds claims Hallin presented this defense "over [his] clear and competent

---

[9] Hallin did not address Bounds's purported objection to the personal use defense in his responsive affidavit. *See generally* Dkt. 8-1.

[10] The Court reviewed each of Bounds's pro se filings in this case. There were certain circumstances when it was necessary to forward those filings to counsel. For example, when Bounds asked (ex parte) for the Court to revisit its decision regarding representation prior to sentencing, it forwarded Bounds's filing to counsel and set that matter for hearing. Dkt. 182. Many of Bounds's filings, however, were not shared with counsel because Bounds did not have a right to file them in the first instance. As the Court noted *prior* to trial when Bounds was filing numerous papers with the Court, it is "not appropriate for a prisoner to file motions pro se when he is represented by counsel" Dkt. 81 (citing *US v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995)). The Court reiterated the same principle *after* trial on at least TWO occasions. Dkts. 195, 208.

objections." Dkt. 1-1, at 7.[11] But even assuming the trial references outlined above constitute a full-blown "personal use" defense, the Court is completely in the dark as to when or where Bounds's "clear and competent" objections occurred. Bounds does not provide any specific information and did not raise any concerns with the Court at the final pre-trial conference. Nor did he object on the stand (in or outside the presence of the jury). In his Petition now, Bounds simply claims that Hallin "never consulted me about this [defense]." Dkt. 1, at 4. And, as noted, in his affidavit, Bounds makes only the conclusory allegation, "I did not agree to this defense or consent to such a defense at trial and I told my trial attorney this. He ignored my wishes and my instructions." Dkt. 1-1, at 18–19.

To be sure, Hallin's complete failure to address this topic in his affidavit is concerning as well. It appears to the Court, however, that this omission may be because Hallin (like the Government) did not view the "personal use" language used at trial as an actual defensive argument. Hallin does say that, following the Court's order on the public authority defense, he asked Bounds how he should proceed but that Bounds did not indicate a preference. Dkt. 8-1, at 6. He also affirms that he never told Bounds he no longer had a say in his defense or that he should just get on the stand and say "yes." *Id*. at 6–7. Hallin also attests that he and Bounds never had a disagreement about what defense to assert and that Bounds was actively engaged in this case (more so than almost any client Hallin has ever had).[12] *Id*. at 6, 8.

---

[11] This summary phrase—written by Bounds's 2255 attorney—follows three pages of caselaw but is devoid of any substance; it simply parrots Bounds's bald assertion from his original petition. Dkt. 1-1, at 7.

[12] The Court can attest to this fact. It concurs in Hallin's assessment that Bounds "would rank in the top five [of his clients] in terms of being the most actively involved in their case and defense." Dkt. 8-1, at 6. The Court already outlined the twenty-one filings Bounds made *after* trial. It is worth noting, however, that

Nevertheless, the Court finds Bounds has not met his burden here. The present facts are vastly different than the cases Bounds cites in support of his position. Against the backdrop of repeated and insistent objections in those cases, Bounds presents solely his conclusory statement that he did not approve of Hallin's choice. This is not enough. Even assuming Bounds had clearly objected to a personal use defense, there is not enough evidence in the record to find Hallin actually set forth such a defense. Hallin made as many comments about the questionable motives of the other witnesses as about Bounds's drug use. He focused on Bounds's honesty and integrity—on him being an "open book"—as much as he did on Bounds's addiction. He mentioned Bounds's mental health, family circumstances, and other topics as well. And yet Bounds nowhere suggests that attempting to shift blame, focusing on his honesty, or talking about his mental health or family circumstances" were ineffective defenses.

Bounds couches this claim as a "constitutional right to autonomy to select [a] defense at trial." Dkt. 1, at 4. His attorney used the same phrase, suggesting that Bounds's constitutional "rights were denied when his attorney proceeded with a defense at trial that [he] had clearly rejected." Dkt. 1-1, at 5. But Bounds was allowed to present his defense— innocent intent—at trial. Hallin made other defensive arguments as well. Assuming arguendo that "personal use" was one of those defensive arguments at trial, there is nothing in the record to support a finding that Bounds told Hallin not to make that argument *except* for his self-serving statement in his Petition. This is not enough. *See Guerra v. United*

---

Bounds made almost as many filings *before* trial as well. And all of this occurred *while* he was represented by competent attorneys.

*States*, 2022 WL 16821694, at *4 (N.D. Tex. Sept. 25, 2022), report and recommendation adopted, 2022 WL 16815139 (N.D. Tex. Nov. 8, 2022) (declining relief when defendant had "present[ed] only self-serving, *post hoc* assertions in his § 2255 motion and affidavit— not contemporaneous evidence"); *Bell v. United States,* 2006 WL 2038560, at *5 (S.D. Ill. July 19, 2006) (holding defendant had "failed to point to any objective evidence" in support of his claim, instead "rel[ying] solely on his own self-serving statements, which are not sufficient to warrant § 2255 relief").

For all these reasons, the Court DISMISSES Bounds's first claim in support of his Petition as meritless.

### C.  "Personal Use" Defense Constituted Ineffective Assistance of Counsel

Bounds's second claim is similar to his first. As explained above, as part of his first claim, Bounds asserted that Hallin did not consult him regarding a "personal use" defense and that failing to do so violated his constitutional rights. In this claim, Bounds relies on such circumstances to argue Hallin's decision not to include him in determining trial strategy amounted to ineffective assistance of counsel.

The United States Supreme Court has explained, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[13] To

---

[13] In applying that presumption, a court must try "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

establish ineffective assistance of counsel, Bounds must satisfy the two-part *Strickland* test: (1) that Hallin's performance was deficient, and (2) the deficient performance prejudiced him at trial. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 363; s *also*, *Strickland*, 466 U.S. at 688. A petitioner must show "gross incompetence" on the part of his or her attorney. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). To satisfy the second prong, the petitioner must be prejudiced by their counsel's errors. A petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

Here, Bounds summarily states that Hallin's performance was deficient because he did not obtain Bounds's consent to present a "personal use" defense at trial. As explained above, it is not clear this was a full-blown defense at trial. More importantly, however, it is not clear how or when Bounds purportedly objected to such a defense.

In support of his second claim, Bounds contends Hallin was essentially "running wild" with his case, and "did not speak to [Bounds] for seven months leading up to trial." Dkt. 1-1, at 9. This claim is patently false.[14] Setting aside the fact that Hallin (along with the rest of the world) was in the early throes of the COVID-19 pandemic during this time— so *personal* interactions were less frequent—the Court knows that Hallin and Bounds

---

[14] For context, trial in this case began on August 24, 2020. Thus, the "seven months leading up to trial" would have been between January 24, 2020, and August 24, 2020.

communicated during this time.[15] For instance, the Court held its hearing on the public authority defense on June 11, 2020. Dkt. 106. The Court observed Bounds and Hallin talking before, during, and after the hearing. Hallin attests that he and Bounds spoke in the U.S. Marshal's holding cell that day as well. Dkt. 8-1, at 6. Later that month, Bounds was arraigned on a Third Superseding Indictment. Dkt. 121. Hallin was present at that hearing and spoke with Bounds.

Additionally, in *multiple* ex parte letters Bounds filed in August of 2020 (e.g. immediately preceding trial) Bounds discussed his *communications* with Hallin. Again, because only the Court has seen these documents it will not cite to them extensively, but it can represent that Bounds uses phrases such as "my lawyer told me"—a clear indication the two had been communicating with each other.[16] Again, these are the instances where the Court has documented, irrefutable evidence that Hallin and Bounds were in communication during the seven months preceding trial. But it has no reason to doubt Hallin's assertions that he and Bounds communicated on numerous other occasions during this same timeframe. Dkt. 8-1, at 4–5.

Consistent with the Court's above finding that there is no evidence to support Bounds's claim that he told Hallin of his objection to a personal use defense, the Court finds that Hallin's performance was not deficient to the point that it constitutes ineffective assistance of counsel. Hallin followed the direction he received from Bounds regarding the

---

[15] The examples provided herein represent merely a few of the communications between Hallin and Bounds of which the Court is aware.

[16] And from the context of Bounds's motion, the Court knows the communications were contemporaneous with Bounds's filings.

public authority defense. He endeavored to make an innocent intent defense as well. He also made other "defensive" arguments at trial. Hallin was in communication with Bounds, did not stymie Bounds's desires, and worked within the confines of the Court's rulings.

The Court need not reach *Strickland's* second prong considering its ruling on the first, but even assuming arguendo that Hallin's performance was deficient, there is no indication that this purported poor performance was the moving factor behind the jury's decision to convict Bounds. Said another way, there is no evidence suggesting that, but for Hallin's performance, the result would have been different. Bounds's brief argument on this point is that because the drug quantities were so large in this case, no reasonable juror would have believed Bounds possessed them solely for personal use. He claims, therefore, that any suggestion by Hallin of personal use was "laughable," and undermined his credibility in front of the jury. Dkt. 1-1, at 10.

By Bounds own admission at trial, he was a "heavy" user who "[could not] go more than four hours without smoking it or I – I start to detox and its really bad . . . ." CR-290, Dkt. 236, at 129–30. Now, there was testimony at trial that the quantity of drugs in Bounds's possession when he was arrested represented hundreds, or even thousands, of individual doses or uses. *Id*. at 19–22. So yes, it was unlikely that those drugs were all for Bounds and his personal addiction. But, as illustrated above, it appears this personal use defense was argued in such a way as to shift blame from Bounds to others and to illustrate his actions were not part of a broader conspiracy; rather, he was buying and selling drugs to support his own habit. There was never any mention by Hallin that *all* of the drugs seized were for Bounds's personal use. In any event, whether any particular theory put forth by

Hallin was laughable or credible goes to weight and the jury was able to do just that: weigh all the arguments and evidence and reach a conclusion. It goes without saying that neither Bounds, nor the Court, knows which arguments the jury believed and which they rejected. But there is no evidence that Hallin's "personal use" references were prejudicial to Bounds in any way.

In short, Bounds has not met either element of the *Strickland* test. The Court finds that Hallin's performance was objectively reasonable and there is no evidence to suggest Bounds was prejudiced by Hallin's reliance, if any, on a personal use defense. Bounds second claim is DISMISSED.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason

for its decision. *Asrar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, each of Bounds's claims lack merit. There is no evidence to buttress his self-serving claims and the Court will not modify his conviction or sentence for any of the reasons presented. Therefore, should Bounds wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

The Court is in a unique position to rule on this motion, having presided over this case almost since its inception. The Court is familiar with Bounds and with all Counsel. The Court is also familiar with the parties' filings, its own rulings, trial, sentencing, Bounds's appeal, and everything in between.

Immediately before the start of trial, the Court asked Bounds if he understood, among other things, how going to trial could affect any sentence imposed. Bounds affirmed he did, stating "I maintain my innocence, and I'd like to proceed," restating moments later, "I think we should just move forward." CR-290, Dkt. 232, at 25. Bounds did not express *any* concerns about Hallin's preparation for trial. He did not indicate to the Court that Hallin intended to introduce a defense Bounds had not authorized. And yet now, Bounds claims he raised these issues in a "clear and competent" manner. Dkt. 1-1, at 7. The Court finds

no evidence to support such a claim. Bounds has a constitutional right to determine his defense at trial. But Hallin did not prevent, thwart, or overrule Bounds's wishes. He put forth an innocent intent defense to the best of his abilities within the confines of the Court's rulings. And to the extent Hallin argued a personal use defense, there is no evidence in the record to support Bounds's suggestion that he was opposed to that strategy at the time of trial. Claim I must be dismissed.

Similarly, Hallin did not provide inadequate representation with respect to the so-called personal use defense. With no evidence to support his claim, Bounds has not convinced the Court that Hallin's performance was substandard. Nor has he shown any prejudice even assuming Hallin's representation was inadequate. Claim II must be dismissed.

Finally, Bounds litigated the underlying substance of his third claim all the way to the Ninth Circuit. The Ninth Circuit rejected Bounds's argument, finding that he had, in fact, been allowed to present an innocent intent defense at trial. He cannot relitigate that holding in this forum. And to the extent Bounds's argument is now that Hallin should have more thoroughly investigated an innocent intent defense, the Court finds Hallin was not made aware of this defense until after the Court's ruling on the public authority defense and, furthermore, that he skillfully worked within the confines of the Court's ruling to make this argument without risking a mistrial. Claim III must be dismissed.

In sum, the Court finds no reason to vacate or remand Bounds's conviction or sentence and finds it unnecessary to conduct an evidentiary hearing on the same.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Bounds's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C.
   § 2255 (Dkt.1); CR–290 (Dkts. 254, 255) is **DENIED**. The Clerk of the Court
   is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Bounds is advised that he still may
   request a certificate of appealability from the Ninth Circuit Court of Appeals,
   pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit
   Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Bounds files a timely notice of appeal, and not until such time, the Clerk
   of the Court shall forward a copy of the notice of appeal, together with this
   Order, to the Ninth Circuit Court of Appeals.

DATED: November 1, 2024

David C. Nye
Chief U.S. District Court Judge