UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER W. BOUNDS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 3:23-cv-00255-DCN<br>3:18-cr-00290-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Christopher Bounds's Expedited Motion for Access to pro se letters. Dkt. 15. In sum, Bounds's current attorney—Sandy Baggett—would like access to ex parte letters Bounds sent the Court during the tenure of one of Bounds's prior attorneys—J.D. Hallin. Considering certain time constraints, the Court gave the Government a short period of time to offer its thoughts on the request. Dkt. 16. The Government filed a notice of non-opposition to Bounds's request but noted it will ask for access to these letters as well—at least to the extent any letter is used by Bounds in any further motion practice. *Id*. at 2.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record and without oral argument.

Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Bounds's Motion.[1]

## II. BACKGROUND

As outlined in its recent decision, Bounds raised three claims for relief as part of his 28 U.S.C. § 2255 Petition. Dkt. 13, at 5. First, Bounds claimed that Hallin (his prior attorney) presented a "personal use" defense at trial that he (Bounds) did not authorize, and that doing so violated his constitutional right to control his defense. Second, Bounds claimed Hallin's choice to present this "personal use" defense constituted ineffective assistance of counsel. Third, Bounds argued Hallin was deficient because he failed to present an innocent intent defense at trial.

In rejecting his first claim—that Hallin presented a "personal use" defense at trial without Bounds's permission and contrary to his wishes—the Court analyzed relevant trial testimony, reviewed (and distinguished) cases cited by Bounds, and considered each party's arguments. *Id*. at 14–21. In the middle of this nearly seven-page analysis, the Court commented that this was the first time it was hearing of Bounds's disagreement with Hallin's trial strategy. *Id*. at 18. To emphasize this point, the Court mentioned some twenty-one motions/notices/letters Bounds filed with the Court *after* trial.

Because these documents were filed ex parte, the Court did not discuss the substance of any document in detail. But the Court did explain the letters were worth a passing reference because there was "not a single mention [] of Bounds's purported objection to

---

[1] In this order, the reference "CR-290" is used when citing to the criminal case record in Case No. 3:18-cr-000290-DCN; all other references are to the instant civil case.

MEMORANDUM DECISION AND ORDER - 2

Hallin's assertion (if any) of a personal use defense" in any of those filings. *Id*.

It is these letters (and more) to which Bounds's counsel now seeks access.

### III. ANALYSIS

In the present Motion, Bounds's attorney asserts the Court "used these letters to determine that certain factual statements made by [Bounds] were not true" and that she needs to review those letters to understand "the evidence that has [] been used against [Bounds] . . . ." Dkt. 15, at 2–3. Ultimately, Bounds's current counsel seeks to review these letters to determine whether they could "form a basis for appeal of the court's decision . . . ." *Id*.

Respectfully, the Court disagrees with how Bounds has framed these letters, the Court's use of these letters, and their relative importance moving forward.

In his 2255 Petition, Bounds cited two cases to support his argument that his attorney had proceeded with a defense at trial against his precise wishes. Dkt. 1-1, at 5–6. In both of those cases, the individual defendant had been very vocal with the court about his attorney's performance and/or the fact that his attorney was ignoring his wishes on how to proceed. In its decision here, the Court noted that the facts of those cases stood in stark contrast to the present facts because this was the first time—in the 2255 petition—that the Court was hearing about Bounds's concerns with Hallin's trial strategy. Dkt. 13, at 17–18.

As noted, after making this general observation, the Court went on to say the fact that it was only hearing of this issue now was even more surprising given how vocal Bounds had been with the Court—before, during, and after trial. *Id*. at 18. The Court then referenced a plethora of filings it had received directly from Bounds following the jury trial

MEMORANDUM DECISION AND ORDER - 3

in this matter. It specifically stated it would not get into the substance of those filings for a few reasons. First, Bounds filed them ex parte—meaning he did not intend for others to see them. *Id*. at 18. Second and relatedly, only the Court had actually seen them. *Id.* Third, Bounds was represented by counsel when he made these filings and so the Court ultimately struck most of them. *Id*. at n.10. This aside, the Court explained it felt the presence of all these filings was worth mentioning *briefly* because Bounds was so adamant that, like the defendants in the cases he cited, he had clearly informed the Court about his disagreements with Hallin. The Court's purpose in referencing these filings was not to surprise Bounds's current counsel with information only in its possession, but simply to highlight that Bounds did not clearly communicate his disagreement with Hallin's trial strategy before (or during) trial even though his post-trial letters illustrate he clearly knew how to reach the Court and express his thoughts.

Maybe the Court should have just ended its analysis by saying this was the first time it was hearing this particular argument and that there had been no "clear and competent" objections to Hallin's trial strategy. Regardless, the Court disagrees that it used these letters to "determine that certain factual statements made by [Bounds] were not true and that [Bounds] was not credible . . . ." Dkt. 15, at 2. The Court did not base its decision on these letters. It would have reached the same conclusion without their mention. The letters were, to be frank, merely the "cherry on top" to illustrate the baseless nature of that particular claim.[2]

---

[2] The Court notes it also referenced other letters Bounds filed *prior* to trial later on in the decision to bolster its conclusion that Hallin had not been derelict in his communications with Bounds. Dkt. 13, at 23. Again,

MEMORANDUM DECISION AND ORDER - 4

Bounds has implicitly (and explicitly) made arguments during this litigation that there is a conspiracy against him and/or that the Government and the Court are not taking his arguments and explanations seriously. Candidly, the Court's hope in referring briefly to letters authored by Bounds himself was that doing so would alleviate any of Bounds's further concerns that he wasn't getting a "fair shake." It appears, however, that the Court's mention has caused more consternation than less.

Nevertheless, this brings the Court back to the primary question: should it turn these letters over to Bounds's current counsel for purposes of appeal.

On the one hand, Bounds has given his consent, and the Government does not oppose the request. That said, the Court is very hesitant to turn these documents over at this time and, ultimately, will deny the request. The Court rarely decides matters in a manner that contradicts both parties' positions. But hopefully with some explanation, any concerns about the Court's decision will be dispelled.

First, as noted in its previous decision, this is the first time the Court has appointed an attorney to represent a defendant in a 2255 Petition. Dkt. 13, at 4 n.2. The Court decided to grant the request here *not* because it thought Bounds's initial petition showed merit, but because it both wanted to have competent counsel helping Bounds and to avoid additional ex parte letters. Baggett has served her client well thus far and will continue to do so. But the Court is hesitant to add any potential fuel to the fire. Although Baggett cites the portion

---

the Court made this observation as part of a broader, four-page analysis rejecting that claim and to illustrate the meritless nature of Bounds's argument. But any reference to those letters did not constitute the Court's primary holding in rejecting that claim.

MEMORANDUM DECISION AND ORDER - 5

of the Court's decision where it discussed the letters in relation to claim one, her request now is for ALL letters Bounds sent to the Court during the entire period of Hallin's representation. The Court does not mean to tamp down Baggett's zealous efforts to represent her client. However, the Court also does not want a passing line or reference from one of Bounds 30+ ex parte filings to become a beacon for appeal when it was not litigated previously. The Court has generally summarized the contents of these ex parte filings. *See* Dkt. 13, at 18 (outlining that some of the documents were mundane while others purported to show newly-discovered evidence, and/or were critical of the Court's rulings, the jury's verdict, or Hallin). But, to repeat, the Court did not use these letters as the basis for any of its final decisions in Bounds's 2255 Petition. The Court could excise those two paragraphs from its decision, and the outcome would remain the same.

Second, in a somewhat esoteric sense, *most* of these letters never existed. Bounds was represented by counsel during the time he filed *every single one of these letters*. The Court noted on *multiple* occasions that Bounds's insistence on contacting the Court while represented by counsel was not appropriate. CR-290, Dkt. 81, 195, 208, 212. The Court struck virtually all of these filings. The only exceptions were: 1) inconsequential filings,[3] and 2) filings that dealt with Hallin's continued representation. And, as far as the second category is concerned, the Court provided such letters to counsel, set a hearing to discuss the matters raised therein (Dkt. 195), and wrote a formal decision (Dkt. 212). But otherwise, the filings Bounds made *while represented* were stricken from the docket. As

---

[3] For example, Bounds sent an ex parte letter thanking the Court for its kindness to his mother during trial. He also sent letters asking for simple things like a copy of the docket sheet. These were not stricken per se.

such, it is as if the documents were never filed.

Third, and finally, the Court already denied Bounds a certificate of appealability. Dkt. 13, at 25–26. Of course, Bounds may petition the Circuit for such relief if he so desires. But, as the Court previously held, Bounds's Petition was so void of any facts or evidence in support of his claims, that no "reasonable jurist" could reach a differing conclusion. *Id*. at 25. Trying to glean some information or claim from documents that should never have been filed in the first place goes further than the mandate of a 2255 petition.

For all of these reasons, the Court will not release the letters Bounds filed ex parte with the Court during the course of Hallin's representation.

## IV. ORDER

**IT IS HEREBY ORDERED:**

1. Bounds's Motion for Access (Dkt. 15) is **DENIED**.[4]

DATED: November 26, 2024

David C. Nye
Chief U.S. District Court Judge

---

[4] The one exception to this is as follows. As explained, certain post-trial motions filed by Bounds related to his representation. The Court did *not* strike two of these documents (Dkts. 175, 188) and, in fact, set them for a hearing. Dkt. 195. After the hearing, the Court wrote a formal decision. Dkt. 212. The Court does not know if Baggett has those filings. But insofar as the Court held a hearing and wrote a decision specifically on those motions, they can be released to Baggett. The Clerk of the Court will send those filings to both Baggett and Counsel for the Government.

MEMORANDUM DECISION AND ORDER - 7